UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
:
DONOVAN MCKENZIE, :
:
:
Plaintiff, : **MEMORANDUM AND ORDER**
: 08-CV-0773 (JFB)(AKT)
– against – :
:
R. JAMES NICHOLSON, as Secretary of :
the Department of Veteran Affairs, :
:
Defendant. :
:
----------------------------------X

JOSEPH F. BIANCO, District Judge:

  Plaintiff Donovan McKenzie ("plaintiff" or "McKenzie") brought the above-captioned action against his employer, defendant R. James Nicholson, Secretary of the Department of Veteran Affairs ("defendant" or "VA"), alleging defendant retaliated against him for protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Specifically, plaintiff alleges that defendant failed to promote him twice to positions for which he was duly qualified in retaliation for an informal Equal Employment Opportunity ("EEO") complaint plaintiff lodged with the VA regarding the institution of a dress code for wage-earning employees. Plaintiff seeks: (1) a declaratory judgment specifying defendant's violation of Title VII; (2) an order directing defendant to promote plaintiff to the position which he first sought with accompanying backpay; (3) an award of the difference of wages between the position he held and that which he sought from August of 2004 through March 27, 2007; (4) an award of compensatory damages; and (5) attorney's fees.

  Defendant now moves for an order dismissing plaintiff's complaint in its entirety pursuant

1

to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth herein, defendant's motion is denied.

I. BACKGROUND

A. Facts

The following facts are taken from the Amended Complaint ("Amended Compl."), as well as the documents attached to the initial Complaint ("Compl."),[1] and are not findings of fact by the Court, but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party.

Since 2000, plaintiff has been employed by defendant at the Northport VA Medical Center in Northport, New York as an Electrical Equipment Worker (WG-5) within the VA's Engineering Services. (Amended Compl. ¶¶ 1-2, 7.) On June 25, 2002, defendant, through Chief of Engineering Services David Gould, issued a directive informing all engineering employees that "on or about July 15, 2002 all WG Engineering employees will be in uniform" and "[e]mployees will be required to be in uniform once they are provided." (Compl. at 12.) By unsigned letter dated June 27, 2003 and directed "to whom it may concern," plaintiff stated:

> I feel it is unjust to implement a work policy (uniforms) that target only Wage Grade
>
> workers . . . . If a uniform mandate is to be imposed, it should be implemented to all
>
> in order to be fair and just. Forcing only the Wage Grade workers to wear uniforms

---

[1] The Court notes that "[f]or purposes of a motion to dismiss, [the Second Circuit] ha[s] deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . ." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citing *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989)); *see Stuto v. Fleishman*, 164 F.3d 820, 826 n.1 (2d Cir. 1999) (citing *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996)) (same). Further, because the documents attached to plaintiff's complaint are not designated as separate exhibits but rather comprise the document itself, the Court will cite to each document by its page numbers within the Complaint.

when it is not warranted is unfair and unjust. This violates the Equal Employment Workers Agreement. By doing so creates an added structure other than management and workers. Leading to a class structure where one is privilege [sic] and one is imposed to additional rules and Regulation. Again this is unjust . . . .

(*Id*. at 11.) In or about August 2003, plaintiff filed an EEO complaint alleging that his supervisor, John Bagatais, discriminated against him by instituting the uniform requirement. (Amended Compl. ¶ 12.) On August 18, 2003, Frank Cullen, EEO counselor at the VA, issued a letter addressed to plaintiff referencing a telephone call that plaintiff made on August 13, 2003 to the Office of Resolution Management within the VA regarding the uniform policy. (Compl. at 10.) Prior to filing the complaint, plaintiff spoke with Bagatais on several occasions, expressing his opposition to the uniform rule as well as his intention to file a formal EEO complaint in the event that the issue could not be resolved, to which Bagatais responded by saying "tough" and "that's the rule." (Amended Compl. ¶ 14.)

After plaintiff filed his complaint, he encountered Sally Helsel, the EEO Manager for the Northport VA, who informed him that she was aware of the complaint and had discussed it with David Gould. (*Id*. ¶ 15.) Plaintiff also informed Bagatais of the complaint, who said nothing in response and walked away from plaintiff. (*Id*. ¶ 16.) On September 2, 2003, the VA's Office of Resolution Management issued a letter to the Northport VA with notice that plaintiff had filed a claim of discrimination regarding the uniform policy with the basis of discrimination as yet "undetermined." (Compl. at 18-19.)

At an unspecified time, plaintiff applied for two positions, that of Bio-Medical Engineering Technician, a GS-9 position, and that of Electrical Equipment Worker, a WG-7 position. (Amended

3

Compl. ¶ 8.) By letters dated September 9 and 17, 2004, respectively, plaintiff was informed that he was not qualified for the first position and not selected for the second. (*Id.* ¶¶ 9-10.) Plaintiff was denied the first position because he purportedly had no experience in medical equipment repairs, when allegedly he had substantial experience in that field, as evidenced by a later reclassification of his position to Medical Equipment Repair Worker WG-8, in 2007. (*Id.* ¶ 23.) According to the Amended Complaint, David Gould appointed individuals other than plaintiff to the two open positions, (*id.* ¶ 17), despite the fact that plaintiff met all qualifications for both positions and was more qualified for the position of the Electrical Equipment Worker than the successful candidate. (*Id.* ¶ 18.) In August of 2004, at the time candidates for both positions were being considered and after he filed the 2003 EEO complaint, plaintiff received his first negative work appraisal from Bagatais. (*Id.* ¶¶ 19-20.)

On or about December 30, 2004, after not receiving the promotions he sought, plaintiff requested a review of his job duties. (*Id.* ¶ 21.) The review concluded, upon its completion on or about March 27, 2007, that plaintiff was working at a higher level of skilled employment and thus his position was reclassified to Medical Equipment Repair Worker WG-8. (*Id.* ¶ 22.) By letter dated October 26, 2004, the VA's Office of Resolution Management issued a notice to the Northport VA that plaintiff had requested EEO counseling regarding his claim that defendant had failed to promote him in retaliation for prior activity. (Compl. at 13-15.)

B. Procedural History

On February 25, 2008, plaintiff filed the instant action. He amended his complaint on July 8, 2008. Defendant moved to dismiss on August 13, 2008. Plaintiff filed his opposition on September 15, 2008. Defendant replied on September 29, 2008. The motion is fully submitted, and

4

the Court has considered all of the submissions of the parties.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See ATSI Communs., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007). A claim that is not plausible on its face must be "supported by an allegation of some subsidiary facts to survive a motion to dismiss." *Benzman v. Whitman*, 523 F.3d 119, 129 (2d Cir. 2008). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.

## III. DISCUSSION

Defendant argues that plaintiff has failed to allege a *prima facie* case of employment discrimination and, thus, has failed to state a claim upon which relief may be granted. Specifically, defendant contends that plaintiff has failed to sufficiently allege that he engaged in "protected activity" as it is defined by Title VII, or that he had a good faith belief that he was doing so. Defendant further argues that, even assuming that plaintiff has adequately alleged that he engaged in a protected activity and had a good faith, reasonable belief that the employer had violated Title VII, he has not adequately pled that there was a causal connection between that activity and defendant's failure to promote him to the two positions which he later sought. For the reasons stated herein, the Court finds these arguments unavailing and, therefore, defendant's motion must fail.

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). Generally, in order to establish a *prima facie* case of retaliation, a plaintiff must demonstrate that "(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001) (quoting *Reed v. A. W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)).[2] Title VII protects not only those employees who opposed employment practices made unlawful by the statute but also those who have "a good faith, reasonable belief that the underlying challenged actions of the employer violated the law" even if those actions did not. *McMenemy v. City of Rochester*, 241 F.3d 279, 283 (2d Cir. 2001) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)).

The Supreme Court has recently reiterated that "courts should generally not depart from the usual practice under the Federal Rules [of Civil Procedure]," and explained that heightened pleading requirements can only be established through the legislative process. *Jones v. Bock*, 549 U.S. 199, 212 (2007). No such heightened pleading requirement for discrimination claims exists in Title VII. Therefore, the controlling standard for survival of a motion to dismiss lies in Rule 8(a) of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Swierkiewicz* v. *Sorema N.A.*, 534 U.S. 506, 513 (2002) (holding that complaints in discrimination cases "must satisfy only the simple

---

[2] Defendant, in its motion, does not contend that plaintiff has failed to properly plead the second and third requirements.

requirements of Rule 8(a)").

The Second Circuit has emphasized that the Federal Rules "set forth a pleading standard under which a plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests." *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006). Such a pleading "will enable the adverse party to answer and prepare for trial, allow the application of *res judicata*, and identify the nature of the case so it may be assigned the proper form of trial." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (internal quotation omitted). A clear statement from the plaintiff alleging discrimination by the defendant is sufficient to achieve these goals. *See Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961) (holding that a complaint stating "that defendants have in a willful and malicious manner discriminated against plaintiff" provided sufficient notice of the discrimination claim). Thus, although *Twombly* requires that plaintiff amplify a claim (including a discrimination claim) with some factual allegations if such amplification is necessary to establish that the claim is plausible, *Swierkiewicz* is still good law and there continues to be no generalized heightened pleading standard for Title VII cases. *See Boykin v. KeyCorp*, 521 F.3d 202, 215-16 (2d Cir. 2008) (applying *Twombly* and *Swierkiewicz* and concluding that plaintiff had presented a plausible claim of disparate treatment). As discussed below, the Court finds that plaintiff has satisfied the requirements of Rule 8(a) and asserted a plausible retaliation claim in the Amended Complaint based upon the alleged failure to promote him in retaliation for complaints he made that defendant's uniform policy discriminated against him based on his race.

Defendant first argues that, in lodging an informal EEO complaint regarding the Northport VA's uniform policy, plaintiff did not allege discrimination based on a class protected by Title VII

7

and, therefore, did not oppose a "practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). Thus, defendant contends that plaintiff has not alleged that he engaged in a "protected activity" and his retaliation claim must fail as a matter of law. However, the Court disagrees. In the Amended Complaint, plaintiff specifically alleges the following: "In or about August 2003, prior to plaintiff having applied for the two positions, Bio-Medical Engineering Technician and Electrical Equipment Worker, plaintiff filed an EEO complaint against the VA, alleging that his supervisor, Bagatais, discriminated against plaintiff by requiring plaintiff to wear a uniform." (Amended Compl. ¶ 12.) The Amended Complaint further alleges that "[p]laintiff was subjected to retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*, because he made *an informal complaint of discrimination on the basis of race*." (*Id*. ¶ 24 (emphasis added); *see also id*. ¶ 25 ("The plaintiff was denied promotional opportunities because he made informal complaints of discrimination of [sic] the basis of race.").) Therefore, plaintiff has clearly alleged that he made an informal complaint of discrimination *on the basis of race* related to the uniform policy, which is a sufficient allegation of "protected activity" to survive a motion to dismiss.[3]

---

[3] Defendant notes that neither the June 2002 memorandum regarding uniforms nor plaintiff's June 27, 2003 letter complaining about the policy referred to race. Specifically, in the June 2003 letter, which was attached to the initial complaint in the instant action, plaintiff asserted that the policy created a "class structure where one is privilege [sic] and one is imposed to additional rules and Regulation." (Compl. at 11; Amended Compl. ¶ 12.) However, the fact that the letter does not refer to race does not necessarily lead to the conclusion, at the motion to dismiss stage, that plaintiff did not attribute the uniform policy to race on other occasions and that it was not construed as a race claim by the defendant. For example, in the Amended Complaint, plaintiff alleges to have spoken on several occasions with his supervisor regarding the uniform policy prior to submitting the above-referenced letter. Similarly, the written record of the informal complaint plaintiff lodged via telephone call to the Office of Resolution Management, which states that the bases for the claim was "undetermined," does not conclusively demonstrate that plaintiff, at no point, conveyed that the policy was racially discriminatory. (Compl. at 18-19.) Therefore, although the plaintiff's letter does not directly challenge the policy as racially discriminatory, the use of the phrase "class structure," particularly when accompanied by the charge that the policy privileges one group and burdens another – combined with other alleged conversations by plaintiff with his supervisor regarding the policy (Amended Compl. ¶ 14) –

In a related argument, defendant also suggests that, even if plaintiff complained about the uniform policy as racially discriminatory, he could not have made such a claim in good faith because "courts have consistently held that Title VII does not prohibit an employer from imposing dress codes or grooming requirements upon employees, as long as the policies are even-handed, at least with respect to gender, within the meaning of Title VII." (Defendant's Memorandum of Law, at 5 (citing cases).) Thus, defendant argues that, as a matter of law, "[p]laintiff cannot show that he had a good faith belief that the VA was violating Title VII by requiring all [wage-grade engineering employees] to wear a uniform shirt." (*Id.* at 6; *see also* Defendant's Reply Memorandum of Law, at 4 ("In the instant matter, Plaintiff's complaint to EEO, viewed either objectively or subjectively, was not in good faith.").) However, the Court disagrees. Although even-handed dress codes or grooming requirements have been repeatedly upheld by the courts, such policies, including policies regarding the wearing of uniforms, are not beyond the purview of Title VII. As one court has noted, "[i]t is not impossible to imagine a situation in which a frivolous appearance guideline so disparately impacts a protected class that a jury could infer from the existence of that situation alone that the employer adopted the guideline as a subterfuge for discrimination." *Eatman v. United Parcel Service*, 194 F. Supp. 2d 256, 264 (S.D.N.Y. 2002) (quotations and citations omitted).[4] Therefore,

---

may have made clear to the defendant that plaintiff was making a claim that the uniform policy was discriminatory based on race. In fact, in his opposition memorandum, plaintiff contends that the Northport VA Medical Center processed the claim as a racial discrimination claim. (Plaintiff's Opposition Memorandum of Law, at 4.) This issue regarding whether plaintiff's complaint regarding the uniform policy was asserted and construed as a race discrimination complaint is a fact-intensive inquiry that cannot be resolved on a motion to dismiss. Plaintiff has adequately pled that he made an "informal complaint of discrimination on the basis of race" regarding the uniform policy that is sufficient to survive a motion to dismiss. Of course, defendant is free to raise this issue again, if warranted, at the summary judgment stage.

[4] In *Eatman*, the court concluded, at the summary judgment stage, that plaintiff had "neither shown that the policy severely impacts African-Americans as a class, nor presented any evidence that the policy lacks a legitimate business purpose" and granted summary judgment for the employer. *See Eatman*, 194 F. Supp. 2d at 264. However, such determinations cannot be made, as here, at the motion to dismiss stage prior to

9

although defendant argues that this neutral dress-code requirement has a legitimate business purpose and cannot be a "good faith" basis for a discrimination claim, the Court cannot conclude at the motion to dismiss stage that such a complaint, as a matter of law, could not have been made in good faith.

Finally, the Court finds defendant's argument that the complaint must be dismissed due to lack of causal connection similarly unavailing at the motion to dismiss stage. Specifically, defendant argues that plaintiff's claim fails as a matter of law because the temporal proximity between plaintiff's protected activity and the adverse employment action is so long as to negate any causal connection between the two events. In Title VII retaliation claims, a plaintiff may establish a causal connection between the protected activity and the adverse employment action either through direct evidence of retaliatory animus, or by circumstantial evidence. *See Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). Where there is no direct evidence of such animus, proof of causation may be shown indirectly, by demonstrating that the protected activity was followed closely by a retaliatory action. *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 1991) ("[T]he causal connection needed for proof of a retaliation claim 'can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'") (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (internal citation omitted)).

Plaintiff has alleged that approximately one year after lodging an informal EEO complaint regarding defendant's dress code policy and informing his supervisor he had done so, that same supervisor, in retaliation for the complaint, recommended that plaintiff not receive the promotions

---

discovery.

for which he had applied and was duly qualified. (Amended Compl. ¶¶ 11, 14, 16, 18.) Again, the Court finds that plaintiff's allegations satisfy the strictures of Rule 8(a) of the Federal Rules of Civil Procedure, properly explicating the grounds upon which he seeks relief and asserting a "plausible" retaliation claim. Defendant has not made any claim that plaintiff failed to give sufficient notice of his claim in his complaint. Instead, defendant argues the merits of plaintiff's claim.[5] The fact that defendant was able to argue the merits is evidence that defendant has had sufficient notice, and that plaintiff's complaint achieves the ends the Second Circuit described in *Simmons*. *Simmons*, 49 F.3d

---

[5] Defendant argues that "[t]here exists no causal connection between the August 2003 informal EEO complaint and the alleged failure to promote in September 2004, more than 13 months later . . . . This thirteen month gap breaks any allegation of a causal connection between the protected activity and the adverse employment action." (*See* Defendant's Memorandum of Law, at 9.) The Court notes, however, that the Second Circuit has determined that an adverse action could be retaliatory in nature despite a significant time lapse if the employer took action at the first opportunity to do so. *See, e.g., Grant v. Bethlehem Steel Corp.*, 622 F.3d 43, 45-46 (2d Cir. 1980) (plaintiff established causation despite an eight month lapse in time because the defendant was unable to retaliate as alleged any sooner); *see also Quinby v. WestLB AG*, No. 04 Civ. 7406, 2007 WL 1153994, at *13 (S.D.N.Y. Apr. 19, 2007) (issue of material fact on causation element of retaliation claim despite temporal gap where employer might have waited until first opportunity presented itself to retaliate); *Moore v. Consol. Edison Co. of New York, Inc.*, No. 00 Civ. 7834, 2007 WL 831807, at *7 n.11 (S.D.N.Y. Mar. 20, 2007) (distinguishing *Grant* on the basis that defendant in that case had no opportunity to retaliate soon after plaintiff engaged in protected activity); *Hurd v. New York Health & Hosp. Corp.*, No. 04 Civ. 998, 2007 WL 678403, at *6 (S.D.N.Y. Mar. 5, 2007) (same); *Donlon v. Group Health Inc.*, No. 00 Civ. 2190, 2001 WL 111220, at *3 (S.D.N.Y. Feb. 8, 2001) (same); *Bernhardt v. Interbank of New York*, 18 F. Supp. 2d 218, 226 (E.D.N.Y. 1998) (causation possible despite eleven month lapse between protected activity and firing because defendant had possible reasons for delaying adverse action). As this is an argument on the merits, it is best suited to a later stage in the proceedings when fact discovery has been conducted. The Court recognizes that, in certain circumstances, the lapse in time may be so great that, in the absence of any allegation in the complaint that explains how such a claim could be plausible given the substantial time lapse, dismissal could be warranted. However, this is not such a case. The Amended Complaint alleges that plaintiff received yearly evaluations and his first negative evaluation was in August 2004, approximately one year after his EEO complaint. (Amended Compl. ¶¶ 19-20.) Thus, plaintiff appears to be suggesting that the evaluation in August 2004 and the subsequent denial of promotions in late 2004 were the first opportunities for his supervisor to retaliate against him for his complaint. Given the allegations, plaintiff has stated a "plausible" retaliation claim that satisfies the motion to dismiss standard despite the thirteen-month gap. *See, e.g., Batyreva v. New York City Dep't of Education,* No. 07 Civ. 4544 (PAC) (DF), 2008 WL 4344583, at *14 (S.D.N.Y. Sept. 18, 2008) ("although more than two years passed between Plaintiff's complaint to the SDHR and the alleged discrimination during fall 2006, Plaintiff has plausibly alleged that the events are causally connected to the extent that she is required to plead such a connection at this stage").

at 87 (holding that a movant's failure to argue non-compliance with Rule 8 was evidence that the plaintiff's complaint contained sufficient notice); *see also Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) (stating that the movant's failure to argue a lack of notice was evidence that sufficient notice was given through the pleadings). Thus, although the defendant may believe that there is a lack of evidence to support plaintiff's claim, "[t]his simplified notice pleading standard [under Rule 8(a)] relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*, 534 U.S. at 512. Thus, defendant will have a full opportunity to raise these arguments should the defendant move for summary judgment at the conclusion of discovery.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), is denied. The parties shall proceed with discovery in accordance with Magistrate Judge A. Kathleen Tomlinson's Individual Rules.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 26, 2009
       Central Islip, NY

The attorney for plaintiff is Paul E. Levitt, Vitale and Levitt, P.C., 445 Broadhollow Road, Suite 124, Melville, NY, 11747. The attorney for defendant is Diane C. Leonardo-Beckmann, United States Attorneys' Office, 610 Federal Plaza, Central Islip, NY, 11722.